Dale B. MAUGHAN, et al., Plaintiffs,

v.

NL INDUSTRIES, et al., Defendants.

Misc. No. 81–0205.

United States District Court, District of Columbia.

Oct. 14, 1981.

David E. Kendall, Kevin T. Baine, Williams & Connolly, Washington, D. C., for movant Washington Post Co.

Herbert L. Fenster, Charles A. O'Connor, III, Thomas C. Papson, McKenna, Conner & Cuneo, Washington, D. C., for respondent/defendant SW Servicing, Inc.

## ORDER

JOYCE HENS GREEN, District Judge.

Before the Court is a motion by the Washington Post Company (Post) to quash a subpoena issued to it seeking the production of a former Washington *Post* reporter's notes at a deposition to be taken in an action for personal injuries and wrongful deaths now pending in the United States District Court for the District of Utah.[1] Plaintiffs in the Utah action allege that the victims developed leukemia as the result of exposure to radiation from uranium milling conducted by defendant NL Industries, also known as SW Servicing and hereinafter referred to as SW, the party serving the subpoena on Post. One of SW's defenses is that the statute of limitations expired before plaintiffs initiated their action. Plaintiffs filed their complaint on August 28, 1980. Utah law provides for a two-year limitations period in wrongful death actions. This Court does not presume, of course, to decide questions concerning the Utah statute of limitations, which matters pend before the United States District Court for the District of Utah. However, for purposes of this motion, assuming, as plaintiffs assert, that Utah applies the "discovery" rule (that is, that the cause of action does not accrue until such time as a plaintiff knows, or in the exercise of reasonable diligence should know, of the potential cause of the injury), defendants argue that the wrongful death plaintiffs' cases would be barred had they known or should have known of the cause of death more than two years prior to their filing the complaint; *i. e.*, prior to August 28, 1978.

Plaintiffs aver that they did not discover the alleged cause until October 15, 1978. However, SW has found an article which it says appeared in the Washington *Post* on July 16, 1978, containing statements by or reflecting the beliefs of two of the plaintiffs, Dale B. Maughan and April Barton Longhurst. These statements, SW asserts, show that these plaintiffs then believed or had suspicions that the leukemia was caused by the uranium milling. Consequently, SW seeks the notes, tape recordings, and other documents of the former *Post* reporter who wrote the article relating to conversations he may have had with plaintiffs in order to show that some or all of the plaintiffs knew the alleged cause of the injury on or before July 16, 1978, which, of course, would put the filing of the complaint (under the rule as plaintiffs construe it) beyond the limitations period. Post moves to quash the subpoena on the ground that compelled production of the reporter's notes would violate the guarantees of freedom of the press as provided by the First Amendment to the Constitution.

Ever since the Supreme Court recognized in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), that the gathering of news by the press is protected by the First Amendment, numerous other courts have reaffirmed that protection, to the point that absent a compelling need, a reporter cannot be made to disclose information gained in confidence or concerning his editorial judgment. Post does not con-

---

1. These notes are concededly in the possession, custody, and control of Post. The subpoena does not concern the testimony of the reporter himself; inasmuch as the reporter is now associated with the Los Angeles *Times* and is located in Colorado, his testimony is the subject of a subpoena issued by the United States District Court for the District of Colorado.

tend that any confidential source or confidential information was involved in the newsgathering activities in question. However, the compelled production of the reporter's resource materials and notes would be an obvious intrusion on the protections of the editorial function guaranteed by the First Amendment. Moreover, it has been held that the qualified privilege acknowledged in *Branzburg* extends to resource materials prepared by a reporter in anticipation of writing a news article. *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980).

█ The right of a newspaper to determine for itself what it is to publish and how it is to fulfill its mandate of dissemination must be given great respect if an unfettered press is to exist and information is to flow unhindered from it to the public. To compel the production of a reporter's resource materials such as his personal notes can no doubt constitute a significant intrusion into and, certainly, a chilling effect upon the newsgathering and editorial processes. *United States v. Cuthbertson, supra; Loadholtz v. Fields*, 389 F.Supp. 1299 (M.D.Fla.1975). It is for this reason that the court in *Loadholtz*, a case involving, as here, civil discovery of materials developed in preparation of a news article, stated that compelled production of such materials "is equally as invidious as the compelled disclosure of . . . confidential informants." 389 F.Supp., at 1303. It therefore is clear, as that court noted, that the paramount interest of protecting a newspaper's function of disseminating information outweighs the subordinate interest that the liberal discovery provisions of the Federal Rules of Civil Procedure serve. *Loadholtz, supra*, 389 F.Supp., at 1300.

█ The question, of course, remains, whether SW's need for the reporter's notes is sufficiently compelling to warrant disclosure. This Court finds that it is not. SW is attempting to prove that the plaintiffs knew of the alleged link between the uranium mill and the cases of leukemia before a certain date. Yet all the plaintiffs have been and continue to be available for interrogation as to the issue of their knowledge. SW, however, in making reference to plaintiffs' "claimed lack of knowledge" (Opposition, at 24), suggests that the plaintiffs' responses to inquiries on this issue have been less than truthful. Yet it is clear that there are alternative means of obtaining the information defendants seek. SW has subpoenaed the reporter who wrote the story, and that reporter presumably would be available to verify the information actually published in the *Post*, which could bear on the issue of whether plaintiffs Dale Maughan and April Longhurst knew or should have known of the alleged link between the mining and the injuries. While the issue of the permissible scope of the deposition of the reporter is not before this Court and remains for the United States District Court for the District of Colorado to consider, should it be brought to that court's attention, it does not appear that to ask the reporter simple questions as to matters evident on the face of the article (such as whether it was truly published on the date asserted and whether he did in fact interview plaintiffs Dale Maughan and April Longhurst before writing the article) would present the same interference with First Amendment rights as would requiring Post to disclose the reporter's resource materials. Moreover, as SW's exhibits show that plaintiffs Dale Maughan and April Longhurst did not deny making the statements that appeared in the article, SW could in any case attempt to obtain the information it needs by way of stipulation or request for admissions.

Consistent with the foregoing, it is this 14th day of October, 1981,

ORDERED, that the motion of the Washington Post Company to quash the subpoena for production of notes of its former reporter served upon it by defendant SW Servicing (also known as NL Industries) in this matter shall be and hereby is granted.