**PALANDJIAN, Plaintiff,**

v.

**PAHLAVI, Defendant.**

**Misc. No. 84–0227.**

United States District Court, District of Columbia.

Nov. 8, 1984.

Joseph C. Zengerle, of Bingham, Dana & Gould, Washington, D.C., for movant.

Peter E. Halle, of Milbank, Tweed, Hadley & McCloy, Washington, D.C., for defendant.

## ORDER

CHARLES R. RICHEY, District Judge.

Before the Court is a Motion to Quash Subpoena. This matter arises out of a civil action in the United States District Court for the District of Massachusetts (*Palandjian v. Pahlavi*, 586 F.Supp. 671 [D.C. Mass.1984]). Movant Ronald Koven is not a party to the underlying civil action. He seeks to have this Court quash a subpoena *duces tecum*, served on him at a deposition which he attended voluntarily and without benefit of counsel, on the grounds that such subpoena is unreasonable and oppressive. In addition, he raises certain First Amendment arguments.

Movant Kovan is a journalist, employed as a "stringer" with the Boston Globe newspaper. His residence is Paris, France. In February, 1982, movant conducted two interviews with the defendant in the underlying action, who is the sister of the late Shah of Iran. The result of those interviews was an article, published by the Boston Globe on February 12, 1982. The underlying civil action in this matter was filed in July, 1983. Plaintiff's case rests partly on assertions and statements made during the course of the two interviews between movant and the defendant Pahlavi, and which were subsequently published by the Boston Globe.

Plaintiff asked movant Koven if he would consent to come to Washington, D.C. to undergo a brief fifteen to twenty minute deposition to back up his story. Movant agreed to come down for the purpose of defending his story. His understanding apparently was that this deposition would be quite brief and of no serious consequence, and that his presence was that of a "neutral" in the underlying proceedings. He arrived voluntarily and unaccompanied by counsel, even though he had very limited experience with legal matters such as these. However, at the deposition itself the situation as it had been described to him changed radically. Plaintiff's counsel kept her word and held her questions to five or ten minutes. Defendant's counsel, however, quickly evidenced an intention to present a vigorous and aggressive presence. Prior to plaintiff's counsel even finishing her questions, defendant served upon the movant a subpoena *duces tecum*, requiring movant to appear 10 days later for a second deposition bringing with him his notes and tapes from the interviews with the defendant. These documents are located in Paris. Defendant's counsel then proceeded with a three hour intensive questioning session with the movant. Not without justification, the movant responded with surprise and irritation at this sudden turn of events. Defendant's counsel quickly attempted to label movant a "hostile witness."

On November 1, movant filed in this Court a motion to quash the subpoena as being unreasonable and oppressive in that it requires him to travel back to Paris, France to obtain the documents requested, with all the expense and inconvenience such an unplanned for journey brings. In addition, movant in his oral argument before the Court brought up the argument that the documents in question are protected under the First Amendment. Defendant, on the other hand, sees no oppression or impropriety in the subpoena as it reads

or as it was served on the movant. Defendant further responds to the First Amendment argument by claiming that such protections are waived when the very source of the journalist's story is the party who is making the request for documents used as the basis of the story. Defendant claims that in such a situation, there exists no issue of confidentiality.

After careful consideration of the arguments of the parties, both oral and written, the Court finds that the subpoena in question should be quashed as being oppressive and unreasonable and in violation of a journalist's qualified privilege against disclosure of resource material under the First Amendment which was designed to foster and protect the free flow of information.

Initially, the Court notes that there is nothing improper with counsel mounting a forceful and agressive attack on a deponent. Often times that is the most effective way for a party to gain needed information. However, there are bounds to what will be tolerated by this Court. Fairness and proper notice are two notions which should underly every legal action so as to prevent these kinds of surprises. In this case the movant was asked to voluntarily appear and he complied. Given no hint that he would be subjected to anything beyond that which a layman to the law might be able to understand and answer, he appeared without benefit of counsel. There is evidence that defendant knew of the deposition at least a week prior to movant leaving Paris and coming to the United States, yet counsel took no action to request the documents, or at least give notice of counsel's intentions until after movant was already on this side of the Atlantic. Now, defendant would have movant re-cross the ocean on short notice and seriously disrupt his own life and obligations to make up for defendant's failures. The Court will not sanction such actions.

Turning next to the question of whether movant has available to him First Amendment rights which would prevent defendant from subpoenaing these documents, the Court finds that such protections do apply under the rationale of editorial function acknowledged in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Although defendant would have the Court hold that the exclusive rationale behind First Amendment protection for journalist's notes is based on confidentiality, the Court feels that defendant fails to see the broader picture. The basic rationale is to protect and foster the "free flow of information." *Carey v. Hume,* 492 F.2d 631 (D.C.Cir.1974), *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *United States v. Cuthbertson,* 630 F.2d 139, 147 (3rd Cir.1980); *Maughan v. NL Industries,* 524 F.Supp. 93 (D.D.C. 1981). Certainly, confidentiality of sources is a major factor in this area, but it is not the sole or overriding factor. As the Court held in *Cuthbertson,* subpoenas of these kinds of journalist's notes and tapes can be "a significant intrusion into the newsgathering and editorial processes," and "may substantially undercut the public policy favoring the free flow of information." *Id.* at 147. That case, and *Maughan, supra,* stand for the proposition that the overarching public policy is what the First Amendment qualified privilege is designed to protect, and not merely the component of confidentiality.

What the defendant is seeking are the very notes and tapes from which the article was directly written. They form the heart of the journalist's work. It would have a chilling effect on the flow of information indeed if the qualified privilege would disappear at the request of the subject of a journalistic work. Reporters would have to be on guard when reporting interviews such as these, due to the threat of being forced to turn over all their work should the interviewee dislike the way the article was written. As the Court stated in *Loadholtz v. Fields,* 389 F.Supp. 1299, 1302 (M.D.Fla.1975), "the compelled production of a reporter's source materials is equally as invidious as the compelled disclosure of his confidential informants."

The Court further feels that these First Amendment interests outweigh defendant's interest in enforcing the subpoena. Initially, and the Court believes dispositively, the privilege belongs to the movant journalist and not to the defendant. *Cuthbertson, supra* at 147. Therefore, even if the notes and tapes in question are of defendant's own words, she is not entitled to "waive" the privilege for the movant. Secondly, there exist alternative sources for the information defendant is seeking. The most obvious source is the defendant herself. These, as she has repeated over and over, are her own words. Even with the passage of time, it is not an unreasonable assumption that she knows something about their content and validity. Other alternative sources must also be available to someone with the vast resources of the defendant without disturbing the First Amendment.

Finally, the Court does not agree that the movant himself waived the privilege by coming to the deposition. He appeared without counsel in good faith. He was not prepared for or put on notice of what awaited him. From the deposition transcript it is apparent that as soon as he realized the trap that had been laid for him he attempted, however inartfully, to assert his rights. That the movant failed to say in precise legal phraseology what his intentions were is of no matter. As a layman, movant adequately asserted his privilege when he objected several times on the grounds of "journalistic ethics." It is clear to the Court that he was aware of his privilege and was trying to assert it in a difficult situation. Counsel's attempts to have him declared a hostile witness were also overhasty in light of the facts surrounding this deposition.

Therefore, in light of the foregoing, the Court this 8th day of November, 1984, hereby

ORDERS that the motion by Ronald Kovens to quash the subpoena *duces tecum* served on him on October 26, 1984 be and hereby is Granted.