**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**SEAHAWK DEEP OCEAN TECHNOLO- GY, INC., John C. Morris, Gregory H. Stemm and Daniel S. Bagley, Defendants.**

**Civil No. 3:95MC451(DJS).**

United States District Court, D. Connecticut.

Feb. 13, 1996.

Peter B. Bresnan, Robert G. Wilson, Washington, D.C., for S.E.C.

Mark V. Connolly, Tyler Cooper & Alcorn, Hartford, CT, for Seahawk.

## *RULING ON MOTION TO QUASH SUBPOENA*

SMITH, United States Magistrate Judge.

The movant, Robert Samek ("Samek"), filed this miscellaneous action seeking to quash a subpoena served upon him in connection with a matter pending in the United States District Court for the Middle District of Florida. *See Securities and Exchange Commission v. Seahawk Deep Ocean Technology, Inc.*, Civil No. 94–1249–CIV–T–178 (M.D.Fla.). The movant, a reporter, is a non-party in the underlying Florida litigation and argues that the deposition subpoena served upon him by the plaintiff, the Securities and Exchange Commission ("SEC"), is improper based upon the journalist's privilege. For the reasons that follow, the motion to quash is **DENIED.**

### FACTS

The movant, Samek, is a professional journalist and a resident of the State of Connecticut. Prior to living in Connecticut, Samek was a reporter for the *St. Petersburg Times* ("the Times") in St. Petersburg, Florida. In June 1989, Samek wrote a news article entitled "Galleon may hold vast treasure," which recounted efforts to recover treasure from sunken vessels off the Florida coast.

On August 9, 1994, the SEC filed a lawsuit against Seahawk Deep Ocean Technology, Inc. ("Seahawk"), and three former officers and directors of Seahawk alleging violations of Section 10(b) of the Securities and Exchange Act and Rule 10b–5, based upon the sale of Seahawk Company securities.

On September 29, 1995, the SEC mailed a subpoena to the plaintiff, seeking his deposition. The deposition was ultimately set to take place on November 1, 1995, in Connecticut. In response and objection to the subpoena, Samek has filed the instant motion to quash.

### STANDARD

■ A motion to quash is governed by the provisions of Federal Rule of Civil Procedure 45. In particular, subsection (c)(3)(A)(iii) provides that a court may quash a subpoena if that subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies. . . ." Fed.R.Civ.P. 45(c)(3)(A)(iii). Further, the rule provides that the court may order production of such documents under specified conditions where the party on whose behalf the subpoena is issued shows a substantial need for the material and that it is unable to meet that need without undue hardship. Fed.R.Civ.P. 45(c)(3)(B)(iii). The court may consider a movant's non-party status when weighing the burdens imposed in connection with the subpoena at issue. *See Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir.1993).

### DISCUSSION

The movant asserts that the subpoena at issue must be quashed because the plaintiff, the SEC, can not overcome the journalist's privilege in the context of the underlying civil litigation. Samek argues that: 1) the defendants should exhaust alternative sources of the information before requiring the deposition of a reporter, i.e., the defendants in the underlying case should be deposed before Samek; and 2) the information sought is not necessary to the SEC's case in the underlying litigation.

The SEC responds that it only seeks to depose the movant, Samek, on the narrow issue on which his testimony is sought. The SEC seeks the movant's testimony "for only one purpose: to ask Mr. Samek to verify that one of the defendants in this case in fact made the statements Mr. Samek attributed to him in a published newspaper article Mr. Samek wrote." Further, the SEC states that, "the limited deposition the Commission seeks will not require Mr. Samek to reveal any confidential sources or unpublished resource materials or otherwise intrude on the *St. Petersburg Times'* editorial process." To the extent a privilege may apply, the SEC asserts that Samek waived that privilege

when he discussed his article with a third party.

In the Second Circuit, reporters enjoy a qualified privilege with respect to information gathered in connection with the publication of an article.[1] "When a litigant seeks to subpoena documents that have been prepared by a reporter in connection with a news story, this Circuit's standard of review, at least in civil cases, is well settled:

> ... disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources.

*United States v. Burke,* 700 F.2d 70, 76–78 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983) (citing *Baker v. F & F Investment,* 470 F.2d 778, 783–85 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973)); *see also In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7–8 (2d Cir.1982) (per curiam).[2] This qualified privilege serves "... to protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources." *Petroleum Products,* 680 F.2d at 7–8.[3] In *von Bulow v. von Bulow,* 811 F.2d 136 (2d Cir.1987), the Second Circuit recognized that "the relationship between the journalist and his source may be confidential or nonconfidential for purposes of the privilege," and that "unpublished resource material likewise may be protected." *Id.* at 142; *see also United States v. Markiewicz,* 732 F.Supp. 316, 319 (N.D.N.Y. 1990).[4]

" 'It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.' " *von Bulow,* 811 F.2d at 144 (quoting *In re Grand Jury Subpoena Dtd. January 4, 1984,* 750 F.2d 223, 224 (2d Cir.1984)). Before assessing the aforementioned test in light of the facts of a given case, the court must first determine whether the movant has meet his threshold burden of establishing the elements of a privileged relationship. In *von Bulow,* the Second Circuit examined the boundaries of the journalist's privilege and held that,

> the individual claiming the privilege must demonstrate, through competent evidence, the intent to use material-sought, gathered or received-to disseminate information to the public and that such intent existed at the inception of the newsgathering process.

*von Bulow,* 811 F.2d at 144. This test "requires an intent-based factual inquiry to be made by the district court." *Id.*

On the facts of the present case, it is undisputed that the movant, Samek, is a journalist and wrote the article at issue with the intent that it be disseminated to the public. The qualified First Amendment privilege applies in this case, but "[t]he extent of the privilege is governed by the circumstances." *Markiewicz,* 732 F.Supp. 316.

The requested information does not involve any potentially confidential information or any unpublished documentary evidence. In *United States v. Markiewicz,* 732 F.Supp. 316 (N.D.N.Y.1990), *aff'd in part and rev'd*

---

1. See *United States v. Markiewicz,* 732 F.Supp. 316, 318–19 (N.D.N.Y.1990), for a discussion of the history of the privilege and related cases.

2. The Second Circuit subsequently limited *Burke* to its facts in light of Supreme Court authority on the issue of whether the civil standard for disclosure of information subject to the qualified reporter's privilege also applies in the criminal context. *United States v. Cutler,* 6 F.3d 67 (2d Cir.1993).

3. In *Burke,* the Second Circuit noted that "[t]his demanding burden has been imposed by the courts to 'reflect a paramount public interest in the maintenance of a vigorous, aggressive and

independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment, see, e.g., *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).' " *Burke,* 700 F.2d at 77 (quoting *Baker* 470 F.2d at 782).

4. In *Markiewicz,* the court recognized the applicability of the qualified privilege where the subpoena sought corroboration of published information. The court, however, applied a more lenient standard for overcoming the journalist's privilege and concluded that the government had overcome the asserted privilege. *See infra* at 273–75.

*in part on other grounds,* 978 F.2d 786 (2d Cir.1992), *cert. denied,* 506 U.S. 1086, 113 S.Ct. 1065, 122 L.Ed.2d 369 (1993), the court was presented with a situation similar to the one at hand. In that case, the government sought the testimony of three reporters to corroborate the fact that the defendants in the underlying case[5] made the statements reported in the newspapers. *Id.* at 317. The court held that although the qualified First Amendment privilege applied, the Government made a showing sufficient to overcome the privilege.

The courts have recognized several factors which "diminish the weight to be accorded the qualified privilege claimed by a newspaper reporter." *Id.* at 319. The privilege is diminished when the underlying trial is criminal, *id.* (citing *Baker v. F & F Investment,* 470 F.2d 778, 784 (2d Cir.1972); *Driscoll v. Morris,* 111 F.R.D. 459, 461 n. 6 (D.Conn. 1986)), when the testimony sought is not of a confidential nature, *Markiewicz,* 732 F.Supp. at 319 (citing *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 597 (1st Cir.1980)); *see also Petroleum Products,* 680 F.2d at 5, when the reporter himself is subpoenaed, *Markiewicz,* 732 F.Supp. at 319 (citing *Maughan v. NL Industries,* 524 F.Supp. 93, 95 (D.D.C.1981)), and if the questions asked of the reporter are narrowly tailored. *Markiewicz,* 732 F.Supp. at 319 (citing *N.L.R.B. v. Mortensen,* 701 F.Supp. 244, 250 (D.D.C.1988)).[6] In *Markiewicz,* the court concluded, after a thorough analysis of Supreme Court and Second Circuit authority, that in light of the presence of the above-mentioned factors, "the test to be employed should be flexible and not gauged by the relatively unforgiving test of whether the material sought is highly material, critical, and not available from alternate sources." *Markiewicz,* 732 F.Supp. at 320. According to that court, "the appropriate standard for reviewing the claimed privilege is whether the testimony sought is relevant, not unduly cumulative and not available from other sources."[7]

The SEC subpoena does not seek any information protected by the First Amendment as the SEC has overcome the movant's qualified privilege. The SEC does not, admittedly, seek any document or piece of information regarding confidential sources or material that was unpublished. Indeed, it appears that the SEC does not seek any documents at all, but simply seeks the movant's testimony to confirm the accuracy of his story which the defendants have, in sworn testimony, denied.

The three elements of the *Markiewicz* test have been satisfied. The testimony sought is directly relevant to the claims in the underlying action. These claims involve allegations of securities fraud by the defendants. Specifically, the SEC alleges that the defendants made false statements to reporters in order to manipulate the price of Seahawk stock.[8] The SEC seeks Samek's testimony in order to confirm the accuracy of the statements he

---

**5.** The underlying case in *Markiewicz* was a criminal proceeding stemming from criminal acts on Indian territory. The three reporters who were subpoenaed in connection with that case had reported statements made by several of the defendants in the underlying criminal action.

**6.** The court also noted that, "[c]oncomitantly, certain questions will not interfere with a reporter's first amendment [sic] rights as much as other questions." *Markiewicz,* 732 F.Supp. at 319 (citing *Continental Cablevision, Inc. v. Storer Broadcasting Co.,* 583 F.Supp. 427, 432 (E.D.Mo. 1984)).

**7.** Prior to articulating this more lenient test, the court discussed the Second Circuit's reference to Justice Powell's reservations in his concurrence in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). In addition, the *Markiewicz* court assessed the interests of the reporters and the public which were potentially affected by the testimony at issue. The court concluded that the single factor impinged upon by requiring the reporters' testimony was the fact that the reporters would loose time from their news gathering and reporting during the time that they spent testifying and waiting to testify at trial.

**8.** The underlying complaint alleges that the defendants made false and misleading statements to the press regarding the discovery of a Spanish colonial treasure galleon in Florida waters. Following release of the press reports, the price of Seahawk stock rose dramatically. The complaint alleges that the individual defendants profited personally by selling their Seahawk stock in this inflated market and that defrauded stockholders now hold stock worth less than $.01 per share.

attributed to one of the underlying defendants in the *St. Petersburg Times* article. This testimony is directly relevant to the SEC's proof of its underlying claims. Further, the testimony is not unduly cumulative or available from another source. There is nothing in the record to indicate other evidence in support of the accuracy of the statement's in Samek's article and, therefore, the testimony sought does not appear to be unduly cumulative. Although the movant argues that this evidence is available from another source, namely, the defendants, the SEC has stated that the defendants have, under oath, denied making the statements attributed to them. This court is not persuaded that the testimony sought is available from any other identifiable source and, therefore, the third prong of the *Markiewicz* test is satisfied.[9]

Weighing the interests at stake in this action, the balance tips in favor denying the motion to quash. The subpoena does not seek information regarding a confidential source, nor does it seek any unpublished information or documents prepared in connection with the article at issue. On the other hand, the testimony is highly relevant to the underlying case and there is a strong public interest in favor of the litigation of such claims. The SEC brings securities enforcement actions in the public interest of preventing widespread securities fraud and, on the facts of this case, that interest outweighs any interest the movant might have in not disclosing the verification testimony at issue.

The motion to quash the SEC's subpoena relating to the underlying case entitled *Securities and Exchange Commission v. Seahawk Deep Ocean Technology, Inc.,* Civil No. 94–1249–CIV–T–178 (M.D.Fla.), is **DENIED**. The deposition shall be limited to the verification testimony discussed herein.

**9.** The facts of the instant case also satisfy the stricter *Burke/Petroleum Products* test. As previously noted, the SEC's underlying claim is that the defendants made false statements to reporters regarding a discovery off the coast of Florida. The subject of the within subpoena was a witness to one of the alleged acts of misconduct and his testimony is, indeed, "highly relevant" to the SEC's case. Second, the SEC has a "compelling need" for the testimony. Despite the movant's

## CONCLUSION

For the foregoing reasons, the motion to quash (document no. 1) is **DENIED**.

It is so ordered.

argument that the availability of the article itself diminishes the SEC's need for the testimony, the defendants' statements to the contrary may necessitate testimony verifying the fact that the defendants actually made the statements attributed to them. Finally, as noted, *supra,* the testimony sought is not available from other sources. Samek is the only identified source for the verification testimony sought.